AO 106 (Rev. 04/10) Application for a Search Warrant

CMR

FILED
MAY 04 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One (1) Alcatel Onetouch Cellular Telephone
Model: A464BG
IMEI: 014499005255318

Case No. '17MJ1337

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 952,960 | Importation of Methamphetamine |

The application is based on these facts:

See attached affidavit of HSI Special Agent Michael Lesley, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Michael Lesley, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/4/17

[signature]
*Judge's signature*

City and state: San Diego, CA

Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

CMR

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE SEARCH OF | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT |
| --- | --- |
| **One (1) BLU Cellular Telephone**<br>Model: Zoey II<br>IMEI: 357507062591022<br>IMEI: 357507064701025<br>FCC ID: YHLBLUZOEYII<br><br>**One (1) Alcatel Onetouch Cellular Telephone**<br>Model: A464BG<br>IMEI: 014499005255318 | |

I, Michael Lesley, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search the following:

a. One (1) BLU Cellular Telephone, Model: Zoey II, IMEI: 357507062591022, IMEI: 357507064701025 FCC ID: YHLBLUZOEYII, (Target Telephone 1); and

b. One (1) Alcatel Onetouch Cellular Telephone, Model: A464BG, IMEI: 014499005255318. (Target Telephone 2), hereinafter **Target Telephones**

2. Agents seized **Target Telephones** on March 10, 2017, from Oscar Javier MARDUENO at the time he was arrested at the Otay Mesa Port of Entry, San Diego, California, for the importation of approximately 17.60 kilograms (38.80 pounds) of methamphetamine, in violation of Title 21, United States Code, Sections 952, 960. At the time of his arrest, MARDUENO was the driver and sole occupant of a green 2000 Honda

Accord bearing California license plate 6JRU647. **Target Telephones** are currently in the possession of the Homeland Security Investigations located at 2255 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of **Target Telephones** will produce evidence of the aforementioned crimes, as described in Attachment B-1 and B-2.

**EXPERIENCE AND TRAINING**

4. I am a Special Agent employed by the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) and have been so employed since April 2016. I was a Border Patrol Agent employed by the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, from October 2009 until I became an HSI Special Agent in April 2016. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, GA. I have received basic training in conducting narcotics smuggling investigations and the enforcement of numerous Immigration and Customs laws within the United States. My training has also included information on the sales, usage, manufacturing, distribution of illegal narcotics, the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

5. I am currently assigned to the Deputy Special Agent in Charge – San Ysidro Office and have been so assigned to a Contraband Smuggling Group for about 6 months. During this time, I have investigated illicit controlled substance trafficking in San Diego and surrounding areas. I have had formal training and experience in controlled substance investigations and I am familiar with the manner in which controlled substances are manufactured, packaged, marketed, and consumed. I completed trainings on narcotic investigations that included classroom and field training in the complete investigations of

narcotics, sales of narcotics, and the culture of the narcotic sales community. I have also attended a 40-hour class on smuggling trends, highway interdiction, and indicators of narcotics trafficking. I have received training in the identification of all types of controlled substances by sight and odor. In the course of my employment, I have become familiar with the ordinary meaning of controlled substance slang and jargon, and I am familiar with the manners and techniques of manufacturers and traffickers in controlled substances as practiced locally.

6. As an agent, I have participated in numerous major narcotic trafficking investigations. I have been present and participated in undercover surveillance operations, the purchase of large amounts of narcotics, vehicle stops with large seizures of narcotics recovered, and interviewed many suspects who were arrested to further enhance my training and understanding of the narcotics trafficking industry.

7. During the course of my duties and while assisting other law enforcement personnel, I have interviewed or conversed with countless narcotic users. From these conversations and interviews, I have become familiar with the manner in which controlled substances are packaged, marketed and consumed.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track

the originating and destination phone numbers of calls placed to and from cellular telephones.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by

a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search cellular telephones that are believed to contain evidence of violations of 21 U.S.C. §§ 952, 960.

12. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**FACTS SUPPORTING PROBABLE CAUSE**

13. On March 10, 2017, MARDUENO attempted to enter the United States from Mexico through the Otay Mesa, California, Port of Entry as the driver and sole occupant of a green Honda Accord, bearing California license plate 6JRU647.

14. When MARDUENO entered through the primary inspection vehicle lane, Customs and Border Protection (CBP) Officer Michael Gabbard observed MARDUENO, the sole driver of the vehicle, appear to be nervous and avoid eye contact. CBPO Gabbard performed a cursory inspection of the vehicle using a K910B Buster Contraband Detector on the driver's side quarter panel and passenger's side quarter panel, which indicated a high reading. Because of the high-density readings, the vehicle was referred to secondary inspection.

15. At secondary inspection, the vehicle was driven through the Z-Portal x-ray machine. A CBPO conducted an x-ray scan on the vehicle and noticed anomalies located in the right and left rear panels of the vehicle. Further, a Narcotics and Human Detector Dog alerted to the rear quarter panels of the vehicle. Further inspection of the vehicle revealed 30 vacuum-sealed packages containing white crystalline substance, which field-tested positive for methamphetamine for a total weight of 17.60 kilograms (38.80 pounds).

16. MARDUENO was arrested and officers seized the **Target Telephones** from MARDUENO. Based upon my experience investigating narcotics smugglers and the particular investigation in this case, I believe that MARDUENO likely used **Target Telephones** to coordinate the importation of methamphetamine into the United States.

17. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that **Target Telephones** contain evidence of violations of 21 U.S.C. §§ 952 and 960, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location data:

a. tending to identify attempts to import methamphetamine or other controlled substances from the United States to Mexico and to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from the United States to Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from the United States to Mexico;

d. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance

from the United States to Mexico, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

18. Based upon my experience and investigation in this case, I believe that MARDUENO is involved in narcotics smuggling activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of MARDUENO, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Telephones**.

19. Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Based on California DMV records, the vehicle is registered to an individual named Alberto Cabrera from September 21, 2016 to September 21, 2017. Further, based on the insurance identification cards found inside the vehicle, the vehicle's insurance policy is under an individual named Ivan Martinez. The insurance policy has an effective date of December 20, 2016 until June 20, 2017. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as MARDUENO will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts,

I respectfully request permission to search **Target Telephones** for data beginning on December 1, 2016, up to and including March 10, 2017.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

23. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that **Target Telephones** were used to facilitate the offense of importation of controlled substances. **Target Telephones** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960.

24. Because **Target Telephones** were seized, there is also probable cause to believe that evidence of the illegal activities committed by MARDUENO, as described in Attachments B-1 and B-2, continue to exist on **Target Telephones**.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

25. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize items listed in Attachment B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Michael Lesley
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 4th day of May, 2017.

HONORABLE KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The property to be searched is described as:

**One (1) Alcatel Onetouch Cellular Telephone**
Model: A464BG
IMEI: 014499005255318

Currently in the possession of the Homeland Security Investigations located at 2255 Niels Bohr Court, San Diego, California 92154.



# ATTACHMENT B-2

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of December 1, 2016 to March 10, 2017:

a. tending to identify attempts to import methamphetamine or other controlled substances from the United States to Mexico and to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from the United States to Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from the United States to Mexico;

d. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from the United States to Mexico, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952 and 960.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.